PETER BENTLEY AND JOHN BENTLEY, PARTNERS, &c., PLAINTIFFS, PLAINTIFFS IN ERROR, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, DEFENDANTS, DEFENDANTS IN ERROR.

*Argued December 6, 1907—Decided March 2, 1908.*

1. The services of an attorney as an advocate in this state, when such services are either requested or accepted by a client, are presumed to be gratuitous, unless there is an express contract to pay a specific amount for such services.
2. The mere fact of employment of an attorney by a client does not empower such attorney to contract with another attorney that the client shall pay the latter for his services as counsel.

On error to the Supreme Court.

For the plaintiffs in error, *Warren Dixon.*

For the defendants in error, *McDermott & Enright.*

The opinion of the court was delivered by

REED, J.    The writ brings up a judgment of involuntary nonsuit entered in an action tried at Hudson Circuit.

The action was brought to recover for services rendered by the plaintiffs as attorneys, and also for counsel fees.

The action, for the services in which this suit is brought, was upon a bond given by the Fidelity and Deposit Company of Maryland to secure the execution of a contract entered into by the Metropolitan Construction Company. The liability of the defendants to the plaintiffs to pay counsel fees

turns upon the power or want of power in one Bussing as agent of the defendants, to enter into an express contract with the plaintiffs to pay them counsel fees.

The amount sought to be recovered was $1,202.50. The services rendered by the plaintiffs were the preparation and filing of pleadings, and the preparation of the cause for trial, and the trial thereof, which trial resulted in a verdict for the plaintiffs for the full amount claimed.

The action was brought not only against the Fidelity and Deposit Company, but also against its principal on the bond, the Metropolitan Construction Company, and the same counsel defended both defendants.

As to that portion of the claim for services as attorney no recovery was possible in the action without a taxed bill of costs. *Strong* v. *Mundy, 7 Dick. Ch. Rep.* 833–836.

There was no such bill produced at the trial.

As to that part of the plaintiffs' claim which represented fees for advocacy, or counsel fees, it is entirely settled in this state that no action will lie for them, unless the claim is supported by an express contract entered in between the defendants and the plaintiffs to pay a specific sum.

Without such express agreement, a fee paid is regarded as an *honorarium,* and no legal liability to pay it arises from the rendition of services alone. *Schomp* v. *Schenck,* 11 *Vroom* 195; *Hopper* v. *Ludlum,* 12 *Id.* 182; *Zabriskie* v. *Woodruff,* 19 *Id.* 610.

The plaintiffs had previously acted as counsel for the Metropolitan Construction Company, but had never acted for the Fidelity and Deposit Company. The relation of the plaintiffs to the defendant is exhibited by the following facts: After the summons in the first action was served upon the New Jersey agent of the Fidelity and Deposit Company, the writ was sent to a firm of lawyers in New York City, Messrs. Boardman, Platt & Soley, who were the attorneys for the defendant in that city. It appears from the testimony of Mr. Peter Bentley, one of the plaintiffs, that he was visited in the latter part of January by a Mr. Bussing, and that in the conversation with Mr. Bussing the defence of that action by

the Messrs. Bentley was discussed and an arrangement was entered into in regard to the payment for the services of the Messrs. Bentley, which were to be $250 retainer, $100 a day in court and $15 an hour. A letter was received soon afterward, dated February 3d, 1903, which letter purported to come from Boardman, Platt & Soley, and contained a copy of the summons and declaration in the suit. The letter announced that Mr. Early, the president of the Metropolitan Construction Company, had suggested that the defence of the suit be placed in the hands of the Messrs. Bentley. The Messrs. Bentley engaged as associate, Mr. Dixon, to assist in the defense of the action. Pleas were prepared, and inasmuch as the Messrs. Bentley already represented the Metropolitan Construction Company, one of the defendants, they arranged that they should sign a plea filed on behalf of that company, and that Mr. Dixon should sign the plea on behalf of the Fidelity and Deposit Company.

The plea signed by Mr. Dixon was sent to Mr. Bussing to be verified, and was returned verified by one James R. Kingsley, as the attorney in fact for the Fidelity and Deposit Company.

The relations between Mr. Bussing and Boardman, Platt & Soley, so far as exhibited, are that Bussing had an office on the same floor as Boardman, Platt & Soley, and was connected with them in some way in the conduct of this litigation, and that the defendant had an agent occupying a New York office on the same floor also.

It also appears that the plaintiffs rendered bills for their services through Mr. Bussing to Messrs. Boardman, Platt & Soley, and that Mr. Bussing wrote the plaintiffs on letterheads of Boardman, Platt & Soley to try to get compensation for their services from certain persons who had indemnified the Fidelity and Deposit Company against liability upon the bond sued on, and if those persons would not, then the defendants would pay the bill. It appears also that at the trial Mr. Bussing was present.

Aside from these facts, there is nothing in the case to show that the Fidelity and Deposit Company authorized the firm

of Boardman, Platt & Soley to enter into a contract with the plaintiffs to pay them for services as counsel. Nor is there anything to show that Boardman, Platt & Soley had authorized Mr. Bussing to make such a contract. There is nothing to indicate that the defendants authorized Boardman, Platt & Soley to employ other counsel at all. As already exhibited, the only circumstance exhibiting the relation between the defendants and the New York firm is that the summons in the defending case was sent to that firm, from which, of course, the inference arises that Boardman, Platt & Soley was to appear for the Fidelity and Deposit Company in the action. The only indication of knowledge that some one other than the members of that firm was engaged in the defence, is that the plea got to the hands of some one who swore to the affidavit annexed to the plea, and that this plea was signed, not by the plaintiffs, but by Mr. Dixon, with whom it is not pretended any contract was made.

It is entirely settled that a lawyer employed by a client to institute or defend a cause, cannot by the mere force of such employment delegate to another what he is engaged to do personally, and so cannot expressly or impliedly contract with that other that the client shall pay the latter for his services.

The cases upon this point are collected in 3 *Encycl. L.* 352, 353, and 4 *Encycl. L. & Pro.* 986.

Of course there can be, coupled with a retainer of a lawyer, an express authority to engage other counsel, or his act in doing so may be ratified by his client by words or by conduct.

There are many cases in other jurisdictions where mere knowledge that the counsel has acted as such will impute to the client the promise to pay for his services. This rests upon the general rule that where services are requested, or beneficial services are accepted, an implied promise arises to pay for them. But no such implied promise respecting the payment of counsel fees arises in this state merely from the request that a person shall act as counsel or from the acceptance of services as counsel. Inasmuch as the services of counsel is assumed to be gratuitous, it follows that a delega-

tion of power to an agent, or to a lawyer to engage counsel in this state, would carry with it no delegation of power to enter into a contract to pay a specific sum for such services.

Assuming that Boardman, Platt & Soley were employed to defend the original action, and assuming that it appeared that this firm, through Bussing, did engage the plaintiffs to conduct such defence, so far as concerns the services of the plaintiffs as counsel, the presumption would be that such services were gratuitous, and any pretension of Bussing or Boardman, Platt & Soley to enter into a contract by which the ordinary character of such service is changed, must rest upon an express delegation of power given to Boardman, Platt & Soley and by them to Bussing to bind the defendants by such an agreement.

In the absence of any such authority, the contract made with Bussing was a nullity, and the nonsuit was right.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Reed, Trenchard, Bergen, Bogert, Vroom, Green, Gray, Dill, J.J.   12.

*For reversal*—None.